Anthony Edward KESTLER, Plaintiff,

v.

NORTH CAROLINA LOCAL GOVERN-MENTAL EMPLOYEES' RETIRE-MENT SYSTEM, a corporation; Board of Trustees of the North Carolina Local Governmental Employees' Retirement System, a body politic and corporate; Dennis Ducker, Director of the North Carolina Local Governmental Employees' Retirement System (in his official capacity); Harlan E. Boyles, Treasurer of the State of North Carolina and Chairman of the Board of Trustees for the North Carolina Local Governmental Employees' Retirement System (in his official capacity), and The State of North Carolina, Defendants.

No. C–C–91–221–MU.

District Court of United States,
W.D. North Carolina,
Charlotte Division.

Dec. 16, 1992.

Fred W. DeVore, III, Devore and Acton, Charlotte, NC, for plaintiff.

Alexander McC. Peters, Atty. General's Office, Norma S. Harrell, NC Dept. of Justice, Raleigh, NC, for defendants.

OPINION

MULLEN, District Judge.

THIS MATTER COMING ON TO BE HEARD AND BEING HEARD before the undersigned, the Honorable Graham C. Mullen, judge presiding over the October 1992 term of Federal District Court for the Western District of North Carolina, upon the plaintiff's Complaint and Petition for Declaratory Judgment. It appearing to the Court that the plaintiff filed his Complaint and Petition for Declaratory Judgment on July 12, 1991 and therein alleged that certain limitations placed on his disability income as a former Mecklenburg County Police Officer are unconstitutional and constitute a breach of contract. The plaintiff seeks prospective injunctive relief against the State of North Carolina pursuant to 42 U.S.C. § 1983.

The primary issue before the Court is whether the imposition of an earnings cap in a disability pension plan after the beneficiary vested in said plan violates the United States Constitution.

The plaintiff is represented by Fred W. DeVore, III and the defendants are represented by Alexander McC. Peters of the Office of the North Carolina Attorney General.

The parties have entered into certain stipulations which have been made a part of the record and which are undisputed. Based upon those stipulations, the Court makes the following Findings of Fact:

FINDINGS OF FACT

1. This is an action brought by a former Mecklenburg County Police Officer for a determination of his disability retirement rights.

2. The plaintiff Anthony Edward Kestler joined the Mecklenburg County Police Department on August 19, 1974.

3. As a county police officer he became a participant in a disability retirement plan known as the "Law Enforcement Officers' Benefit and Retirement Fund" (hereinafter known as "Retirement Plan").

4. The Retirement Plan benefits were established by N.C.Gen.Stat. § 143–166 *et seq.*

5. Under the Retirement Plan as it existed in 1973, before becoming eligible for disability Officer Kestler had to either have been an employee for ten years with five years membership in the retirement fund or become disabled on the job due to an incident which occurred after a year of full time service.

6. In 1979 the General Assembly amended the Retirement Plan by lowering the service requirement for disability from ten years to five years.

7. At the time he vested in the Retirement Plan, N.C.Gen.Stat. § 143–166(y) read, in pertinent part, that an eligible employee, that is, one who suffered total and permanent disability and who filed an application for disability more than a year after the onset of his disability, shall:

> receive a basic disability retirement allowance equal to one and fifty-five one-hundredths percent (1.55%) of his average final compensation multiplied by the number of years of creditable service which he would have had if he had continued in service until his fifty-fifth birthday. Average final compensation shall mean the average annual compensations of a member during the four consecutive years of membership service (48 consecutive employments months) that produce the highest average annual compensation.

8. Under the 1979 amendment, effective July 1, 1979, Officer Kestler vested after five years of service on August 16, 1979.

9. Prior to July 1, 1980, the Retirement Plan did not have a limitation on the earnings a disabled police officer could earn without having his disability retirement benefits reduced.

10. In 1980 the state legislature amended the statute governing the Retirement Plan, N.C.Gen.Stat. § 143–166(y), by placing a limitation on the earnings a disabled police officer could earn in a non-state law enforcement occupation and still receive disability benefits.

11. In 1981 the state legislature passed legislation to exclude disabled retirees who retired prior to July 1, 1981 from the earnings limitation.

12. In 1983 the Retirement Plan became the Law Enforcement Officers' Retirement System, but the provisions of the Retirement Plan did not change.

13. In October 1985 while on duty Officer Kestler was called to investigate a burglary. During his investigation he gave chase on foot to a suspect. During the chase Officer Kestler fell, severely injured his knee, and was unable to return to law enforcement duties.

14. In 1985, effective January 1, 1986, the Law Enforcement Officers' Retirement System was terminated and N.C.Gen.Stat. § 143–166, *et. seq.* was repealed. The liabilities, obligations and functions under the Retirement Plan were transferred to the North Carolina Local Governmental Employees' Retirement System (hereinafter known as the "System"). The System was and is governed by N.C.Gen.Stat. § 128–27, *et. seq.* The System became the assignee of the disability retirement plan in which the plaintiff was enrolled. The earnings cap placed on disabled employees under the prior Retirement Plan before it was terminated is identical to the earnings cap found in the System.

15. On or about March 1, 1986, Officer Kestler was declared permanently disabled from law enforcement work by the State Retirement Medical Board. Since that time he has received disability benefits.

16. After becoming disabled, Officer Kestler has worked on a part time or full time basis in an effort to supplement his disability income. However, from the time of his injury until 1991, he has not earned more than the earnings cap placed on him by the challenged statutes.

17. In late 1990, Anthony Kestler was hired by Midwest Security to provide security for the federal courthouse on a contract basis. For the first time since his disability he earned more than allowed by the earnings cap and thus will receive reduced disability benefits.

The Court further adopts the stipulations submitted by the parties as Findings of Fact and hereby incorporates them by reference.

The Court is aware of the fact that there is litigation pending before the North Carolina Court of Appeals which may provide definitive guidance as to North Carolina law on some of the issues presented in the case before this Court. Ordinarily, the concepts of comity and federalism would require that this Court await the decision of the North Carolina Court of Appeals. Several opinion dates have passed, however, without an opinion being issued on those cases. As the Court feels that the parties are entitled to have this matter resolved, the Court issues this decision. The Court feels compelled to note that circumstances of this case only serve to highlight the need for a referral mechanism. After listening to arguments of counsel and considering the legal authority submitted by the parties, the Court makes the following Conclusions of Law:

## CONCLUSIONS OF LAW

1. Defendants argue that plaintiff's claims are barred by the Eleventh Amendment. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

2. While the language of the Amendment expressly applies only to suits against a state by citizens of another state, the Supreme Court has long held that the Eleventh Amendment also bars suits against a state by citizens of that state. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendants is proscribed by the Eleventh Amendment." *Id.* (quoting *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). To

determine whether an entity such as the System is an agency of the state and thus protected by Eleventh Amendment immunity, it becomes necessary to look to North Carolina law. *See Huber, Hunt & Nichols v. Architectural Stone Co.,* 625 F.2d 22, 24 (5th Cir.1980). Under North Carolina law, it is clear to the Court that the System is considered a state agency or instrumentality. *Stanley v. Retirement and Health Benefits Div.,* 66 N.C.App. 122, 310 S.E.2d 637 (1984). Thus, both the State of North Carolina and the System are immune from suit in this Court by virtue of the Eleventh Amendment.

3. Defendants concede, however, that under the Eleventh Amendment, the plaintiff can make a claim for declaratory and prospective injunctive relief against defendants Ducker and Boyles in their official capacities. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Young,* the Court held that if a state official enforces an unconstitutional state enactment, the official is stripped of his official character, and may be subject to suit in federal court. *Id.* at 159–60, 28 S.Ct. at 453–54. *Young,* however, has only been applied in cases where a violation of federal law by a state official is ongoing. *Papasan,* 478 U.S. at 277–78, 106 S.Ct. at 2939–40. Furthermore, relief which serves to compensate a party injured in the past by the act of a state official violating federal law has been held to be barred by the Eleventh Amendment. *Id.* at 278, 106 S.Ct. at 2940. "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Id.* This Court finds that the type of relief sought by the plaintiff in the instant case, prospective injunctive relief to bring an end to an ongoing violation of federal law by state officials, is precisely the type of relief permitted under *Young,* and is thus not barred by the Eleventh Amendment.

4. As to the defendant Board of Trustees of the System, this Court finds that the Eleventh Amendment does not bar

prospective injunctive relief. While the plaintiff has named the Board of Trustees of the System as a defendant in this lawsuit, it is clear that he seeks to obtain injunctive relief against the individual officials who compose the Board of Trustees in their official capacities. While the Board of Trustees, as an agency or instrumentality of the state, cannot itself be sued, it is clear that its members can be sued in their official capacity for injunctive relief pursuant to *Young*. It would be a glorification of form over substance to require the plaintiff to name the Board members individually so as to elude the jurisdictional bar of the Eleventh Amendment. *See Arthur v. Nyquist*, 573 F.2d 134, 138–39 (2d Cir.1978), *cert. denied*, 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 169; *Adamian v. Univ. of Nevada*, 359 F.Supp. 825 (D.Nevada 1973), *rev'd on other grounds*, 523 F.2d 929 (9th Cir. 1975).

5. Notwithstanding any Eleventh Amendment concerns, defendants also contend that the defendants are not "persons" for purposes of liability under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (1981).

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that a state is not a person within the meaning of § 1983. *Will*, 491 U.S. at 63, 109 S.Ct. at 2307. It is thus clear that the defendant State of North Carolina is not subject to liability under § 1983.

6. Similarly, the suit against the System is essentially treated as a suit against the state, and, as such, it is also barred, as it is not a person under § 1983.

7. Defendants again concede that defendants Ducker and Boyles can be subject to suit in their official capacities for declaratory and injunctive relief under § 1983. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10.

8. The Board of Trustees, can also be properly sued under § 1983. The Board is composed of persons who, in their official capacities, administer the System. As explained above, injunctive relief should not be barred against a plaintiff who has, for whatever reason, chosen not to name each member of the Board of Trustees individually in the complaint.

9. The plaintiff's claim that the defendants have violated his rights under the North Carolina Constitution is barred by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

10. In addition to the Eleventh Amendment and § 1983 defenses, the defendants argue that the plaintiff's claim is time barred, as the statutory amendment in question became effective on July 1, 1980, and the plaintiff did not file this lawsuit until 1991. The three-year limitation period established by N.C.Gen.Stat. § 1–52 applies to this § 1983 claim. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Defendants argue that the statute of limitations began to run, at the latest, in April of 1987, when the plaintiff was for the first time required to report his previous year's earnings to the Local Retirement System pursuant to N.C.Gen.Stat. § 128–27(e)(4). Defendants contend that when the plaintiff was first required to make this report, he was in possession of facts from which he could ascertain whether his alleged vested rights to receive benefits had been violated. Plaintiff points out, however, that if he had brought this lawsuit prior to the time when he was actually being paid above the earnings cap, the defendants would have successfully argued that the lawsuit be dismissed as not yet ripe for adjudication. In *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954),

the Supreme Court ruled that an action was not ripe when the plaintiffs "in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise." *Boyd,* 347 U.S. at 224, 74 S.Ct. at 448. Similarly, in the present case, the plaintiff could not have sued prior to 1991, for prior to that time, there was no way to determine that the amendment setting the earnings cap would even affect him in any way. Only when it became clear that he would exceed that earnings cap in 1991, did this lawsuit become ripe for adjudication. If the defendants' argument is followed, all officers participating in the System would have had to bring suit within three years after the amendment went into effect, incurring the expenses and burdens of litigation on the slight chance that they may one day become disabled and subsequently obtain employment in a job which offers earnings exceeding the cap. In the alternative, an officer who has become disabled would have to bring suit within three years after he first filed an earnings report with the Retirement System, on the chance that he may one day earn above the cap. Clearly, such lawsuits would be dismissed for lack of ripeness.

■■■ 11. Defendants also argue that the plaintiff's claims are barred by the doctrine of laches. "The equitable doctrine of laches precludes the prosecution of stale causes of action if the party bringing the action lacks diligence in pursuing his claim and the party asserting the defense has been prejudiced by that lack of diligence." *Newport News Shipbuilding & Dry Dock Co. v. Parker,* 935 F.2d 20 (4th Cir.1991). The defendant has the burden of proving lack of diligence on the part of the plaintiff and resulting prejudice. *White v. Daniel,* 909 F.2d 99 (4th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Lack of diligence may be shown "either by proof that the action was not commenced within the applicable statute of limitations or by facts otherwise indicating a lack of vigilance." *Id.* at 102. Prejudice to the defendant "is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct. *Id.* The defendants have failed to demonstrate to the Court any detrimental reliance or that they were prejudiced in any way. Furthermore the defendants have not shown a lack of vigilance on the part of the plaintiff. Thus, the Court finds that the plaintiff's claims are not barred by the doctrine of laches.

12. Article 1, section 10, clause 1 of the United States Constitution prohibits states from enacting any law impairing the obligation of contracts.

■■■ 13. Plaintiff contends that because the earnings cap was imposed after his contractual benefit became vested, it violates the contract clause of the United States Constitution. The issue before the Court is whether the plaintiff has an enforceable contractual right which has been unconstitutionally impaired by the state. The test for making this determination is set forth in *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). A court must ascertain: (1) whether a contractual obligation is present, (2) whether the state's actions impaired that contract, and (3) whether the impairment was reasonable and necessary to serve an important public purpose. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

14. The two cases cited by both parties regarding this issue are *Griffin v. The Board of Commissioners of the Law Enforcement Officers' Benefit and Retirement Fund,* 84 N.C.App. 443, 352 S.E.2d 882, *appeal dismissed,* 319 N.C. 672, 356 S.E.2d 776 (1987), and *Simpson v. Governmental Employees Retirement System,* 88 N.C.App. 218, 363 S.E.2d 90 (1987), *aff'd per curiam,* 323 N.C. 362, 372 S.E.2d 559 (1988). The *Griffin* case, decided in 1987, would seem at first glance to be directly on point. In *Griffin,* a disabled Mecklenburg County police officer sued the Board of

Commissioners of the Law Officer's Retirement Fund, alleging that the same statute in question in the present case did not apply to him because his retirement rights vested prior to the enactment of the provisions. The North Carolina Court of Appeals, in ruling against the plaintiff, stated that:

> [W]e see no basis for plaintiff's argument that applying the act to him violates his constitutional rights. The legislation that first reduced the benefits of future disability retirees who work and earn money was enacted in 1980, more than a year before the plaintiff retired, and we know of no authority for the proposition that plaintiff's retirement rights vested before then.

*Griffin*, 84 N.C.App. at 445, 352 S.E.2d at 884.

Nowhere in *Griffin* does it reveal how long the plaintiff had been in service prior to the imposition of the earnings cap. Furthermore, it should be noted that the plaintiff in *Griffin* did not allege a § 1983 claim or argue that the earnings cap violated the contract clause.

In *Simpson*, decided almost a year later, the North Carolina Court of Appeals dealt with the specific issue of "whether the pension rights of vested members of the [System] may be made subject to adverse legislative modification without violation of [the contract clause]," labeling it "a case of first impression in North Carolina." *Simpson*, 88 N.C.App. at 219, 363 S.E.2d at 91. Thus, it is apparent that *Griffin* did not address the issue which is presented in both *Simpson* and in the present case. The *Simpson* case dealt with N.C.Gen.Stat. § 128–27(d4), which sets forth the method of calculating disability benefits under the System. After the firemen plaintiffs in *Simpson* became vested, the statute was modified so that the calculation resulted in a smaller retirement allowance for the plaintiffs. The plaintiffs in *Simpson* sought to have their benefits calculated according to the more favorable formula in effect at the time they became vested. The defendants made three arguments: (1) that *Griffin* stands for the proposition that the

state can modify the disability retirement structure and apply the changes to vested members who have not yet retired on disability retirement at the time the changes came into effect, (2) that the state retains the power to modify or amend any of the provisions of the System, and (3) that even if there is a contract which has been impaired, that impairment is lawful because it is reasonable and necessary to serve an important public purpose. *Id.* at 221, 363 S.E.2d at 92.

After reviewing the law in other jurisdictions, the *Simpson* court specifically held that "the relationship between plaintiffs and the Retirement System is one of contract." *Id.* at 223, 363 S.E.2d at 93. The court noted that "[p]laintiffs, as members of [System], had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement became vested." *Id.* at 224, 363 S.E.2d at 94. It should be noted that the court did not discuss the *Griffin* case at all, other than to note the defendants' reliance on it.

The defendants' attempts to distinguish *Simpson* are unconvincing. Applying the *Simpson* case, the Court finds that there is a contractual relationship.

15. Further, the Court finds that the earnings limitation placed on the plaintiff, after he became vested in the Retirement System, unconstitutionally impaired the contractual rights of the plaintiff inasmuch as the plaintiff stands to suffer significant reductions in his retirement benefits as a result of the legislative amendment under challenge.

16. Having found that the state's actions impaired a contractual obligation, the next determination which this Court must make is whether the amendment was reasonable and necessary to serve an important public purpose. In *Simpson*, once the court found that a contract had existed and had been impaired, it went on to find that the issue of whether the amendment was reasonable and necessary to serve an important public purpose was not properly resolved in the court below. *Id.* at 225, 363 S.E.2d at 94. The defendants in *Simpson*,

just like the defendants in the present case, argued that the challenged amendment was enacted primarily to correct inequities in the system. The court stated that it was "not persuaded that this explanation demonstrates or reflects that these changes were reasonable and necessary to serve an important state interest." *Id.* at 226, 363 S.E.2d at 95. There are two other cases since *Simpson* which have addressed the same issue: *Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina, et al.,* 90CVS12090 (Wake County), and *Woodard, et al. v. North Carolina Local Government Employees' Retirement System, et al.,* 91CVS00368 (Wake County). In both of these cases, a superior court judge granted summary judgment in favor of the plaintiffs. The judge found that the change which was enacted to correct an inequity in the system was not reasonable and necessary.

The *Faulkenbury* and *Woodard* cases are currently on appeal, but a decision has yet to be rendered. The superior court's ruling in these cases directly addresses the argument that the defendants are making in the present case, that the amendment was made to correct an inequity. Thus, at this time, the status of the law in North Carolina is that an amendment that merely corrects an inequity is not considered reasonable and necessary to serve an important public purpose. Therefore, it is the conclusion of this Court that the defendants have failed to meet their burden of demonstrating that the amendment at issue was reasonable and necessary to serve an important public purpose.

17. Plaintiff's claim for breach of contract will not be discussed, as the Court finds that it is ancillary to and indeed dependant upon the plaintiff's § 1983 claim.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that to the extent that legislation enacted after the vesting of benefits by the plaintiff on August 16, 1976 in the Retirement Plan described above, its predecessors, successors and assigns, diminishes or restricts or limits the disability benefits that plaintiff would have received under the Retirement Plan in effect at the time he vested, said legislation is unconstitutional as violative of the contract clause of the United States Constitution.

IT IS FURTHER ORDERED that the defendants Boyles and Ducker, as well as the individual members of the Board of Trustees of the System, are hereby enjoined from enforcing any earnings cap against this plaintiff.