**Anthony Edward KESTLER,**
**Plaintiff–Appellee,**

v.

**BOARD OF TRUSTEES OF NORTH CAROLINA LOCAL GOVERNMENTAL EMPLOYEES' RETIREMENT SYSTEM, a Body Politic and Corporate; Dennis Ducker, Director of the North Carolina Local Governmental Employees' Retirement System (in his official capacity); Harlan E. Boyles, Treasurer Of The State of North Carolina and Chairman of the North Carolina Local Governmental Employees' Retirement System (in his official capacity), Defendants–Appellants,**

and

**North Carolina Local Governmental Employees' Retirement System, a Corporation; State of North Carolina, Defendants.**

No. 93–1123.

United States Court of Appeals,
Fourth Circuit.

Argued: Oct. 26, 1993.

Decided: Feb. 23, 1995.

**ARGUED:** Alexander McClure Peters, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellants. Fred William DeVore, III, DeVore & Acton, P.A., Charlotte, NC, for appellee. **ON BRIEF:** Michael F. Easley, Atty. Gen. of NC, North Carolina Dept. of Justice, Raleigh, NC, for appellants.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

Reversed and remanded by published opinion. Judge WIDENER wrote the majority opinion, in which Judge RUSSELL joined. Judge HALL wrote a dissenting opinion.

## OPINION

WIDENER, Circuit Judge:

The plaintiff, former Mecklenburg County Police Officer Anthony Edward Kestler, brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants, the Board of Trustees of North Carolina Local Government Employees' Retirement System (Retirement System) and the Retirement System's director, Dennis Ducker, and treasurer, Harlan E. Boyles (the defendants), unconstitutionally impaired his contractual rights in violation of the Contract Clause, U.S. Const., Art. I, § 10, para. 1, by imposing a limit on the amount of income he could earn without reducing the disability retirement benefits he was collecting due to a work related injury. The defendants appeal from the district court order declaring the Retirement System's cap on earnings for disability beneficiaries unconstitutional and enjoining its enforcement. *Kestler v. North Carolina Local Governmental Employees' Ret. Sys.,* 808 F.Supp. 1220 (W.D.N.C.1992). We reverse.

The parties stipulated to many of the pertinent facts of this case. Kestler joined the Mecklenburg County Police Department in 1974 and became a participant in its retirement program, then known as the Law Enforcement Officers' Benefit and Retirement Fund (LEOBRF). Effective July 1, 1979, a police officer needed five years of creditable service in order to qualify for an unreduced retirement benefit at age 55 for members who were no longer law enforcement officers and who left their personal pension contributions in LEOBRF. 1979 Sess. Laws, C. 838, § 101, codified at N.C. Gen.Stat. 143–166(j) In § 102 of the same amendment, Section 143–166(y) was changed to provide that any officer:

less than 55 years of age with five or more years of creditable service and who has been totally and permanently incapacitated for duty ... may be retired ... on a basic disability retirement allowance....

Under such rules and regulations as are otherwise adopted by the board of commissioners, a member eligible for a basic disability retirement allowance shall receive a disability retirement equal to one and fifty-five hundredths percent (1.55%) of his average final compensation calculated as the average annual compensation of a member during the four consecutive years of membership service producing the highest such average multiplied by the number of years of creditable service which he would have had if he had continued in service until his 55th birthday.

The board of commissioners shall implement the provisions of this subsection by the adoption of necessary and reasonable rules and regulations.

Although this provision contains a statutory formula for determining disability benefit amounts, it did not contain any limitation on income earned in addition to any disability

benefits received. Therefore, when Kestler reached five years of service on August 16, 1979, he became eligible, if disabled, to apply for disability retirement benefits, on which at that time there was imposed no earnings cap.

On June 24, 1980, the North Carolina General Assembly enacted 1979 Sess. Laws C. 1215, which, in pertinent part, amended N.C. Gen.Stat. 143–166(y) to include a requirement that any police officer, who received disability retirement benefits and earned income that, added together, made a total of more than what his final compensation was as a police officer, forfeited any benefits in excess of that total compensation that were not paid for on account of the employee's own contributions. This earnings cap became effective on July 1, 1980 for employees retiring after that date. 1981 Sess. Laws, C. 975 § 1 slightly modified the C. 1215 earnings cap formula and made it applicable only to those officers who retired on disability benefits after July 1, 1981. In 1983, the name of the retirement system was changed to the Law Enforcement Officers' Retirement System (LEORS).[1]

Beginning on January 1, 1986, the General Assembly repealed § 143–166[2] and transferred all members of LEORS to the North Carolina Local Government Employees' Retirement System (Retirement System), codified at N.C. Gen.Stat. § 128–27 et seq.[3] The earnings cap remained the same after this transfer, because then and now, N.C. Gen. Stat. § 128–27(e)(1) which governed the Retirement System contained the same earnings cap as the replaced separate police retirement system.

In October of 1985, Kestler fell while chasing a burglary suspect and injured his knee so severely that he was approved for disability retirement benefits, effective March 1, 1986, and has remained unable to perform his law enforcement duties. However, Kestler could still maintain gainful employment and did so to supplement his disability benefits, but never made enough so that the earnings cap reduced his benefits. In 1990 he obtained employment that might cause him to exceed the earnings cap in 1991 with a corresponding reduction in his disability benefit amount. As a result, Kestler filed a declaratory judgment action on July 12, 1991, claiming, *inter alia*, that his interest in the disability plan was vested at the time the earnings cap became effective. He sought a determination that the earnings cap was an unconstitutional impairment of his contract in violation of the Contract Clause, U.S. Const., Art. I, § 10, para. 1, which provides that "No State shall ... pass any ... law impairing the obligation of contracts...."[4]

On December 16, 1992, the district court, on cross-motions for summary judgment, entered judgment for Kestler. It based its opinion on its finding that Kestler had a vested right in the retirement plan, *Kestler*, 808 F.Supp. at 1222, and enjoined Boyles, Ducker and any individual members of the Board of Trustees of the Retirement System from enforcing any earnings cap against Kestler on its reasoning that the earnings limitation placed on Kestler, after his rights in the Retirement System became vested, unconstitutionally impaired his contractual rights because he stood to suffer significant reductions in his retirement benefits. The district court also concluded that the statute of limitations had not run when Kestler filed his suit and that the reduction was not reasonable and necessary to serve an important public purpose. It reasoned that the earnings cap would affect his benefits in 1991, when his earned income would exceed the earnings cap. *Kestler*, 808 F.Supp. at 1224–25.

█ The defendants present three issues in this appeal: whether Kestler's complaint is barred by the statute of limitations, N.C. Gen.Stat. 1–52; whether a contractual right exists; and whether any such contractual

---

1. 1983 Sess. Laws, C. 468, § 1.

2. See 1985 Sess. Laws, C. 479, § 196(7).

3. This transfer is codified at N.C. Gen.Stat. § 143–166.50(b).

4. The complaint also contains a count (II) under the state constitution and statutes and a count (III) on breach of contract. The district court did not consider the breach of contract count (III), saying it was "ancillary to and indeed dependent upon" the § 1983 claim. Neither did it consider count II.

right was impaired, or whether any impairment was nonetheless constitutional. We now reverse the district court's order in favor of Kestler on the basis of *Griffin v. Board of Comm'rs*, 84 N.C.App. 443, 352 S.E.2d 882, *rev. denied*, 319 N.C. 672, 356 S.E.2d 776 (1987).[5]

■ Initially, we note that the issue of whether a contract right exists is governed by state law, while federal law governs a determination that a contract has been impaired under the Contract Clause. *See Koch v. Yunich*, 533 F.2d 80, 86 (2nd Cir.1976); *Baker v. Baltimore County, Md.*, 487 F.Supp. 461 (D. Md.1980), *aff'd*, (table) 660 F.2d 488 (4th Cir.1981).

The questions involved in this case have been considered directly in only one case in North Carolina. It is *Griffin v. Law Enf. Officers Ben. & Ret. Fund*, 84 N.C.App. 443, 352 S.E.2d 882 (1987).

In *Griffin*, an officer of Mecklenburg County fell while on duty and sustained an injury to his shoulder in February, 1979. He returned to work but continued to have problems with the shoulder, which ultimately required surgery and caused his inability to work from time to time. After a second surgery on the shoulder in December of 1980, he did not work and applied for disability retirement on June 15, 1981. He was granted that disability retirement, effective September 1, 1981 by a letter dated September 11, 1981.

At the time the disability program was instituted, in 1979, there would have been no limit on Griffin's disability benefits, had he been eligible, which depended on his earnings. But on June 24, 1980, the General Assembly amended G.S. 143–166(y) to require disability retirement benefits to be reduced so that the sum of the employee's earnings and his disability benefits could not exceed what would have been his retirement benefits under more ordinary circumstances. Any difference was made up by reducing the retirement benefits from the part not paid for by the employee. Griffin claimed that

the amendment could "not apply to him because his retirement rights had vested before those provisions were enacted, and that if the provisions are interpreted to affect his benefits, they are unconstitutional." 352 S.E.2d at 883. The court held that the application of the amendment to G.S. 143–166(y) was expressly determined by the retirement date of each employee and that "his rights were established not by his condition at a certain time, which is debatable, but by the date of his retirement which is not." *Griffin*, 352 S.E.2d at 884. The court then held that the defendant's rights had not vested until he retired. It stated "We know of no authority for the proposition that plaintiff's retirement rights vested before then." *Griffin*, 352 S.E.2d at 884.

The next case was *Simpson v. Government Emp. Retire. Sys.*, 88 N.C.App. 218, 363 S.E.2d 90 (1987), which involved a similar, but not the same, question for two employees who had been employed for more than five years prior to the time they qualified for disability benefits. They took the disability benefits and then sued because there was a difference in the statutory method of computing them which had existed at the conclusion of five years' service and the method existing at the time of retirement. The case did not involve any earnings' cap, as did the *Griffin* case. The court held without explanation that their right to retirement benefits vested after five years of creditable service under G.S. 128–27(a)(1) and (c). *Simpson*, 363 S.E.2d 90, 91, n. 2. The method of computation of their disability retirement on the fifth anniversary of their employment would have resulted in greater benefits than that which resulted after an amendment to chapter 128 of the statute, effective July 1, 1982. Both of the employees had become qualified by disability for disability benefits subsequent to July 1, 1982. However, had their physical condition enabled them to qualify earlier, they would have received a greater monthly payment.

Because the court held that these employees' rights to benefits had vested prior to the

5. We hold that there was no impairment of a contract because Kestler's rights had not vested until he retired. Thus we do not consider the

other questions raised by the defendants on appeal.

time the statute was amended, it held that their rights under the Contract Clause had been impaired. The court remanded the case to the trial court to ascertain whether or not the changes were reasonable and necessary to serve an important state interest under *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

The court did not explain any difference between its holding and that of *Griffin* and only stated that the State claimed that *Griffin* stood for the proposition that the General Assembly could make changes in vested rights. Of course, that claim was rejected by necessary implication, and, indeed, *Griffin* does not make such a holding.

As those cases apply to this action, *Griffin* is directly on point.[6] The court held that Griffin's rights did not vest until the date of his disability retirement, so Kestler's rights did not vest until his disability retirement, March 1, 1986. Kestler, having no vested right in retirement, then, so far as he was concerned, the legislative change of June 24, 1980, as later made effective to him, effective July 1, 1981, could have been made at any time prior to his retirement without reference to him and without violation of any contractual rights he may have had with the State under the Contract Clause of the Constitution. We are thus of opinion that Kestler has no claim under the contract clause because he did not have a vested right at the time this legislative change was made and became effective as to him. Any right he

may have had was not vested until his disability retirement, March 1, 1986.

It is apparent from reading *Griffin* and *Simpson* that the holdings of those two cases may be inconsistent, but this seems less likely in view of the fact that one of the judges on the panel in each of those cases was the same. When we remember that *Simpson* did not explicitly overrule *Griffin*, nor even criticize the decision, of more force is the statement with respect to overruling by implication made by the Supreme Court of North Carolina in *Cole v. Cole*, 229 N.C. 757, 51 S.E.2d 491, 494 (1949):

> A subsequent decision cannot, by mere implication, be held to overrule a prior case unless the principle is directly involved and the inference clear and impelling.

While the principles involved in *Griffin* and *Simpson* are similar, they are not the same. Neither is there any inference in *Simpson* that it overrules *Griffin*, clear or impelling or otherwise. With those thoughts in mind, we are of opinion that we should follow *Griffin*, a case on facts so similar to the case at hand as to be indistinguishable.

The order of the district court appealed from must be reversed and the case remanded for action not inconsistent with this opinion.

*REVERSED AND REMANDED.*[7]

K.K. HALL, Circuit Judge, dissenting:

On August 16, 1979, Kestler celebrated his fifth anniversary on the police force, and the

---

**6.** The district court, in choosing to follow the *Simpson* case rather than the *Griffin* case, explained that, "[n]owhere in *Griffin* does it reveal how long the plaintiff had been in service prior to the imposition of the earnings cap. Furthermore, ... the plaintiff in *Griffin* did not ... argue that the earnings cap violated the contract clause." *Kestler*, 808 F.Supp. at 1226. A review of the record in the *Griffin* case reveals that Griffin was employed by Mecklenburg County as a police officer "[f]or approximately 12 years prior to December 31, 1980." Complaint, *Griffin v. Board of Comm'rs of LEOBRF*, No. 84CVS918, record, at p. 2. Also, the plaintiff's memorandum of law found in the record at p. 71 argues both due process and contract clause violations. Thus, the court in *Griffin* was presented with very nearly the precise factual circumstances with which we are faced in the in-

stant case. Moreover, we find it irrelevant whether Griffin sued for violations of his Due Process rights or his Contract Clause rights, because in either event, the *Griffin* court found that disability benefits vest upon retirement and not upon the completion of the five-year period of employment.

**7.** The district court held the statute of limitations had not run, but because of our disposition we have not decided that question. We note, however, that in two subsequent cases on facts apparently indistinguishable from *Simpson* the Court of Appeals held the statute of limitations had run. *Faulkenbury v. Retirement System*, 108 N.C.App. 357, 424 S.E.2d 420 (1993), and *Woodard v. N.C. Local Gov. Emp. Ret. Sys.*, 108 N.C.App. 378, 424 S.E.2d 431 (1993).

retirement plan did not include an earnings cap. The cap was added in 1980, and he retired on disability in 1986. The majority and I agree that events subsequent to "vesting" could not decrease Kestler's level of benefits; the only issue before us is whether, under North Carolina law, Kestler's benefits "vested" in 1979 or 1986. The majority relies solely on *Griffin*, whose facts parallel those in Kestler's case, in holding that the vesting occurred on retirement. *Griffin*, however, is in direct conflict with *Simpson*, and it is the latter case that dictates a ruling in Kestler's favor in this appeal. I respectfully dissent.

There simply is no way to reconcile the holdings in *Griffin*[1] and *Simpson*.[2] Although noting that "[w]hile the principles involved in *Griffin* and *Simpson* are similar, they are not the same . . .," *ante* at 804, the majority fails to identify any differences beyond those in the factual settings. The principles involved are precisely the same, and the holdings are diametrically opposite. *Griffin* holds that a retiree receives the level of pension benefits calculated in accordance with the statute in existence at the time he actually begins to receive the benefits, *i.e.* at retirement, while *Simpson* holds that it is the computation method in effect when the employee has met the service requirements for future benefits, *i.e.* before retirement, that determines what level of benefits he will receive. Each panel designated the pivotal moment as the point of "vesting." The resolution of the appeal before us depends on the answer to a single question: Which case do we follow?

The opinions in *Griffin* and *Simpson* were written by different three-member panels[3] of North Carolina's intermediate appellate court. The majority cites *Cole* for the proposition that North Carolina requires a "clear and impelling inference" that an earlier case directly involving the same principle is being implicitly overruled.[4] While the opinion in *Simpson* may not have provided a sufficiently clear inference, its core ruling, and not *Griffin's*, was upheld when the same principle arose again in the same court five years later.

In *Faulkenbury v. Teachers' and State Employees' Retirement System of N.C.*, 108 N.C.App. 357, 424 S.E.2d 420, 426 (1993), the Court of Appeals cited *Simpson* for the proposition that "a statute that diminishes the calculated benefit of an employee impairs that employee's contractual rights." As was the case in *Simpson* and *Griffin*, and is the case in this appeal, the statutory diminution of benefits occurred after the *Faulkenbury* plaintiffs had met the service requirements for "vesting" but before they had actually retired. The court held that the "plaintiffs had stated a valid claim for impairment of obligation of contract" under the first two prongs of the test set forth in *United States Trust Co. of N.Y. v. State of New Jersey*, 431 U.S. 1, 17–26, 97 S.Ct. 1505, 1515–20, 52 L.Ed.2d 92 (1977).[5] 424 S.E.2d at 427. *Faulkenbury*, as the latest and clearest version of the Court of Appeals' view on the issue of vesting in the state employees retirement plan, states the rule in North Carolina with regard to the impairment issue in Kestler's case. *Griffin*, which reigned as precedent for eight months and was never heard of again except for a mention (while its holding was ignored) in the later *Simpson* opinion, is too slender a reed to support the majority's ruling. *Faulkenbury* is the law.

---

1. *Griffin v. Law Enf. Officers Ben. & Ret. Fund*, 84 N.C.App. 443, 352 S.E.2d 882, *appeal dismissed and disc. rev. denied*, 319 N.C. 672, 356 S.E.2d 776 (1987).

2. *Simpson v. Government Emp. Ret. Sys.*, 88 N.C.App. 218, 363 S.E.2d 90 (1987), *aff'd mem.*, 323 N.C. 362, 372 S.E.2d 559 (1988).

3. Judge Cozort sat on both panels but did not write either opinion.

4. *Cole* was decided well before there was an intermediate appellate court in North Carolina. The Court of Appeals was created in 1967. 1967

Sess. Laws c. 108, s. 1 (codified at N.C. Gen.Stat. § 7A–16 (1969)).

5. Under the *U.S. Trust* test, the court must ask the following questions: (1) Did the statute create a contractual obligation?; (2) Did the state legislature impair that obligation?; (3) Was the impairment "necessary and reasonable"? In *Faulkenbury*, the Court of Appeals held that the statutory change in benefits computation satisfied the first two prongs. The court did not, however, reach the "necessary and reasonable" issue.

I would, therefore, affirm the judgment of the district court.