Dennis HOWELL, et al., Plaintiffs,

v.

ANNE ARUNDEL COUNTY, Maryland, et al., Defendants.

No. CIV.A. AMD 96–3787.

United States District Court,
D. Maryland.

July 29, 1998.

Michael L. Marshall, Schlachman, Belsky & Weiner, Baltimore, MD, (Ober, Kaler, Grimes & Shriver, of counsel), for plaintiffs.

Phillip F. Scheibe, David Plymer, Annapolis, MD, for defendants.

MEMORANDUM

DAVIS, District Judge.

The Plaintiffs are five current police officers and one retired police officer of Anne Arundel County and the Fraternal Order of Police (FOP), their union. In this action, they seek injunctive and declaratory relief against the County and several of its officials (sued in their official capacities) (referred to jointly hereinafter as "the County") in respect to recent modifications by the County Council of the officers' retirement plan, which they assert violate the Contract Clause of the federal constitution and state law. Jurisdiction exists under 28 U.S.C. § 1331. Before the court is the County's motion for summary judgment. No hearing is necessary. I conclude for the reasons stated below that there exists no dispute of material fact and that the County is entitled to judgment as a matter of law on Plaintiffs' federal claims. Fed.R.Civ.P. 56. I decline to exercise supplemental jurisdiction over the state law claims. Accordingly, the case will be dismissed with prejudice, in part, and without prejudice, in part.

(i)

On December 2, 1996, the Anne Arundel County Council enacted Bill No. 88–96, which became effective on February 1, 1997. The ordinance effected two changes to the County's Police Service Retirement Plan (hereinafter "the plan") which the Plaintiffs deem objectionable.

First, Bill No. 88–96 reduced *prospectively only* the maximum amount of annual increases in participants' benefits via a modification of the formula used to calculate the annual Cost of Living Adjustment (COLA) payable under the plan. Significantly, Bill No. 88–96 mandates no change in the COLA adjustment to benefits earned before its effective date. In short, therefore, cost-of-living adjustments to benefits earned prior to February 1, 1997, will continue to be calculated under the formula in place before Bill No. 88–96 became law. Thus, officers who were hired and earned qualified benefits prior to February 1, 1997, will upon retirement (and their survivors upon their deaths) have their annual COLA adjustments calculated under a bifurcated formula.[1]

Second, Bill No. 88–96 requires the plan to pay its own expenses. Before this amendment, the law defined the "pension fund" as "the assets of the fund established to pay benefits under this plan." Bill No. 88–96 changed the definition of "pension fund" to read "the assets of the fund established to pay the benefits *and expenses of* this plan." (emphasis supplied). As amended, the law specifies that "[t]he pension fund shall provide funding for ... the cost of administering the plan and the pension fund." Under Bill No. 88–96, then, the pension fund will pay its own administration expenses, and according to Plaintiffs, will likely have a lower fund balance available to pay benefits to pensioners.[2]

---

1. The old formula was calculated by determining the percentage by which the average of the twelve most recent monthly Consumer Price Indexes (CPIs) exceeded the corresponding average index as of the participant's date of retirement. A retiree could not receive a COLA increase of greater than 4%.

   The new formula calculates the COLA by measuring the annual percentage change in the CPI, with a yearly percentage increase in pension benefits limited to 60% of the percentage change in the CPI, or 2½%, *whichever is less*. The new formula, therefore, reduces a retiree's COLA adjustment to annual increases of not more than 2½%, while under the old formula a employee could potentially receive up to a 4% COLA increase.

   As stated in text, the new COLA formula applies only to benefits accrued *after* the date of enactment of the legislation. If an officer had already retired by that date, the new COLA provision would not ever apply. If, however, the

officer was on active duty on February 1, 1997, the new COLA provision would apply *only* to that service the officer accumulates after the legislation's effective date.

2. Plaintiffs' Amended Complaint also alleges that even before the enactment of Bill No. 88–96, the County began paying administrative costs directly from plan assets rather than from other county revenue. *See* Amended Complaint ¶¶ 20–23. Plaintiffs have not sought to explain how such a practice, with or without statutory authority, could conceivably violate the federal constitution. The County funds the great bulk of the benefits payable by the plan (employees make a contribution of 6% of their salaries), as well as the costs of administering the plan. Thus, apart from the relatively insignificant 6% employee contribution, both before and after the effective date of Bill No. 88–96, the County funds all plan expenditures, benefits and expenses alike. Mani-

Plaintiffs contend that the changes to the plan described above violate the Contract Clause of the United States Constitution and the state law doctrine of promissory estoppel.[3]

(ii)

■ The parties agree that in Maryland, as in most states, public employee pension plans embody contractual rights and duties between an employee and the government as employer under the well-settled Contract Clause analytical approach. The County concedes that "[i]t now is generally accepted that the retirement plans of state and local governments give rise to contractual rights within the scope of the Contract Clause." Defs.' Mem. Supp. Mot. Summ. J. at 7. Maryland law defines the scope and incidents of the "contract." *See Kestler v. Bd. of Trustees of North Carolina Local Governmental Employees' Retirement System*, 48 F.3d 800, 803 (4th Cir.)(construing North Carolina law), *cert. denied,* 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995); *Baker v. Baltimore County, Md.,* 487 F.Supp. 461, 466–67 (D.Md. 1980), *aff'd,* 660 F.2d 488 (4th Cir.1981) (table).

(iii)

■ The gravamen of the parties' disagreement in the case at bar is over the question when Plaintiffs' contractually enforceable rights accrue under the plan. As an initial matter, the County notes that the pension rights of several of the Plaintiffs have not vested, and it argues that those Plaintiffs have no standing to sue. Specifically, the County argues without contradiction that to qualify for retirement under the plan, a participant must ·complete 20 years of service with the County or reach age 50 while employed. I agree that the record is clear in this regard, and accordingly, plaintiffs Howell, Simmons and Wild lack article III standing to litigate the issues raised in

this case because they have no vested benefits under the plan. *See generally Burke v. City of Charleston,* 139 F.3d 401, 404–05 (4th Cir.1998) ("The standing requirement, 'perhaps the most important' condition of justiciability, . . . ensures a litigant has a sufficient personal stake in an otherwise justiciable controversy such that the judicial process appropriately should resolve the controversy.") (citations omitted).

■ The County concedes, however, that plaintiffs Shaffer and Tucker have satisfied the conditions for normal retirement by accumulating 20 years of credited service. (Plaintiff Bates, having already retired, and thus being wholly unaffected by the change in the COLA formula, lacks standing to challenge it.). Thus, two of the six individual plaintiffs have a claim to "vested" pension rights. Nevertheless, as is explicated *infra* pp. 5–9, for purposes of my Contract Clause analysis of their claims, Plaintiffs Shaffer and Tucker, who were *eligible* for a full pension but not yet retired on the effective date of Bill No. 88–96, are treated as if they *were* retired on that date. This imperative is justified because, as with Plaintiff Bates, both factually and legally, Bill No. 88–96 will have no retroactive impact whatsoever on their vested benefits. It is this and only this potential harm—retroactive diminution of vested benefits—which is accorded constitutional protection by the Contract Clause. *Cf. Parker v. Wakelin,* 123 F.3d 1 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). Unlike Bates, however, because Shaffer and Tucker in fact have not yet retired and continue to accrue retirement "credits," they satisfy the minimum injury in fact requirements to establish article III standing.

(iv)

■ The Contract Clause of the United States Constitution reads: "No State shall

---

festly, therefore, neither the claim to have such monies "returned" to the plan, nor the claim to enjoin the practice in the future, states a substantial federal question, and I shall not consider it further.

**3.** In a belated supplemental memorandum, Plaintiffs attempted to inject into the case the

issue whether the enactment of Bill No. 88–96 violated the FOP's collective bargaining agreement with the County. In view of the absence of any motion to amend the Amended Complaint, and in view of the dismissal of the state law claims, the request to file a supplemental memorandum is denied.

... pass any Law impairing the Obligation of Contracts ...." U.S. CONST., art. I, § 10, cl. 1. The Clause initially applied only to state attempts to interfere with contracts between private parties. The Supreme Court gradually expanded the Clause's scope, however, and the Court has invalidated legislation which interferes with a contract between private individuals and the state.

As noted in *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992), the Supreme Court has applied a settled analytical approach to analyze whether a contractual right has been violated by a state law under the Contract Clause. The First Circuit recently summarized the threshold issues in that analysis:

> [T]he Supreme Court has elaborated an analysis under which a court must first ascertain whether a change in state law has resulted in " 'the substantial impairment of a contractual relationship.' " *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978)). Next, the reviewing court must determine whether the impairment is nevertheless justified as "reasonable and necessary to serve an important public purpose." *United States Trust Co.*, 431 U.S. at 25, 97 S.Ct. at 1519.... The first step described above can be further broken down into "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."

*Parker*, 123 F.3d at 4–5.

A straightforward application of this analytical model makes it readily evident that, under the circumstances of this case, the County's prospective reduction in the rate of increase of future pension benefits which had not yet vested does not constitute an "impairment" that entitles an employee to obtain judicial relief on the basis of a Contract Clause challenge.

Plaintiffs' Contract Clause claims fail because the pension law change complained of here applies exclusively prospectively and not retroactively to vested benefits; there is no "impairment." *See Baker*, 487 F.Supp. at 475 ("Herein there seemingly was no impairment because no contract rights had vested when the legislative change was made."). In *Maryland State Teachers Association, Inc. v. Hughes*, 594 F.Supp. 1353 (D.Md.1984), Judge Miller noted the difference between prospective and retroactive changes under a Contract Clause analysis:

> A very important prerequisite to the applicability of the Contract Clause at all to an asserted impairment of a contract by state legislative action is that the challenged law operate with retrospective, not prospective effect. *Ogden v. Saunders*, 25 U.S. 213, 12 Wheat. 213, 6 L.Ed. 606 (1827). *See also Old Wine in Old Bottles: the Renaissance of the Contract Clause*, [1979] SUPREME COURT REV. 95, 99. *United States Trust Co., supra*, explicitly restates the existence of statutory retroactivity as a necessary predicate for the applicability of the Contract Clause. *United States Trust Co.*, 431 U.S. at 18 n. 15, 97 S.Ct. at 1515 n. 15. The opinions in both *United States Trust Co.* and *Spannaus* strongly assert that the challenged legislation involved was retroactive and thus, inferentially, impaired the subject contracts. *United States Trust Co.*, 431 U.S. at 14, 97 S.Ct. at 1513; *Spannaus*, 438 U.S. at 246, 247, 249, 98 S.Ct. at 2723, 2724, 2725. No Supreme Court decision has been found in this court's research which has invalidated a non-retroactive state statute on the basis of the Contract Clause.

*Id.* 594 F.Supp. at 1360–61.[4] Since the *Hughes* decision 14 years ago, the Supreme

---

4. *Hughes* rejected a constitutional challenge to a pension benefits reduction similar to that challenged here. In that case, a pension plan modification, *inter alia*, capped COLA increases at 3% for service rendered after the effective date of the change. *Hughes*, 594 F.Supp. at 1358, 1363. There, as here, benefits earned before the act's

effective date would continue to be calculated under the old COLA (in *Hughes*, a potentially unlimited COLA; in the instant case, a CPI average, capped at 4% of retirement benefits per annum). *Id.* The *Hughes* court concluded: "In this most important sense, therefore, the 1984 Act, as contrasted with the effect of the invalid

Court has yet to declare invalid a state law with only prospective effect under the Contract Clause. As the County correctly notes, "[n]o reported case applying Maryland law has imposed any limitation on the right of a government to make *prospective* changes to non-vested plan benefits." Defs.' Mem. Supp. Mot. Summ. J. at 14 (emphasis in original). As stated earlier, the new COLA formula would only apply prospectively to benefits not yet earned by an employee on its effective date, and in that sense (the sense that matters for federal constitutional purposes) the employee's previously-earned benefits would remain unaffected. Of course, as explained *supra*, one who was already retired when Bill No. 88–96 was enacted would remain wholly unaffected by the change.

The County thus correctly argues that because Bill No. 88–96 effected no retrospective diminution of benefits, there has been no "impairment" within the meaning of the Contract Clause. The County goes further, however, to argue that this court should nevertheless conduct a *state law* analysis to determine whether "[p]rospective changes to *vested* benefits are ... 'reasonably intended to preserve the integrity of the pension system by enhancing its actuarial soundness ... without serious detriment to the employee,'" quoting *City of Frederick v. Quinn*, 371 A.2d 724, 726 (Md.Ct.Sp.App.1977), and whether "*prospective* changes to [*non-vested*] benefits ... [are] 'reasonable,'" citing *Saxton v. Board of Trustees of the Fire and Police Employees Retirement System*, 266 Md. 690, 296 A.2d 367, 369 (1972) (emphases added). I decline to do so.

In this respect, the County has accepted, at least in part, Plaintiffs' approach to their claims, which is rooted in the unarticulated premise that upon the commencement of their employment, there existed a *constitutional* barrier, as opposed to a state law "reasonableness" requirement, to any prospective modification to the plan. As *Baker* and *Hughes* strongly intimate, and as I specifically conclude, the constitutional curtain of

protection simply does not extend so far in Maryland. *Cf. Parker*, 123 F.3d at 7–8 (discussing various states' approaches to the issue of public pension vesting rights, and recognizing the difference between state law concepts of "vesting," on the one hand, and constitutional concepts of "vested rights" subject to impairment, on the other hand.).

The law in other states might helpfully be contrasted with that in Maryland to illuminate the point. California courts, for example, have noted that California law, unlike Maryland law, generally regards pension provisions in existence at the time of the commencement of public employment, and which are adopted during public employment, to be all but unalterable; rights vest upon employment. *See United Firefighters of Los Angeles City v. City of Los Angeles*, 210 Cal.App.3d 1095, 1116, 259 Cal.Rptr. 65 (1989) ("Under Maryland law, future pension benefits vest as they are proratedly earned .... This is contrary to California law.") (distinguishing *Hughes*) (citations omitted), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990); *and see Miller v. State*, 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970, 974 (1977) ("[T]he right to pension benefits vests upon the acceptance of [governmental] employment.").

Hence, although it is true that state law informs the analysis of the question whether a contract exists, the question whether there has been an "impairment" is a federal question. *See, e.g., Kestler*, 48 F.3d at 803 ("[W]e note that the issue of whether a contract right exists is governed by state law, while federal law governs a determination that a contract has been impaired ...."). Resolution of that federal question in favor of a governmental defendant in the analysis of a Contract Clause challenge to a pension modification exhausts the federal court's federal question jurisdiction, *see generally Yellow Cab Co. v. City of Chicago*, 3 F.Supp.2d 919, 922–925 (N.D.Ill.1998) (granting motion to dismiss under Fed.R.Civ.P. 12(b)(6) for fail-

---

statutes in *United States Trust Co* .... and *Spannaus* ..., do not retroactively deprive the plaintiff class of benefits or rights for which they had bargained." *Id.* 594 F.Supp. at 1363–64; *and see id.* ("Without belaboring the point further,

this court has concluded on the basis of the undisputed facts in the record that the purported contract rights of the plaintiff class have not been impaired by the 1984 Act.").

ure to state claim under Contract Clause; no cognizable *impairment* of contract alleged, merely a *breach* of contract), and I decline to exercise supplemental jurisdiction in this case. *See also Baker,* 487 F.Supp. at 464–66 & n. 10.

In sum, applying settled doctrine in the case at bar, it is clear that no further Contract Clause analysis of the change effected by Bill No. 88–96 is necessary or appropriate. *See Kestler,* 48 F.3d at 803 n. 5 ("We hold that there was no impairment of a contract because Kestler's rights had not vested until he retired"); *Parker,* 123 F.3d at 9 ("Because there is no attempt here to take away retirees' benefits, there can be no plausible contract clause claim in this case."). There has been no constitutionally cognizable "impairment" in this case because there has been no retroactive diminution of benefits or any other infringement of vested rights or entitlements. *See* text and n. 1 *supra.* Whether state law provides a remedy to Plaintiffs, as they assert, is a question as to which I express no opinion.

(v)

For the reasons set forth, I am persuaded that the County is entitled to judgment as a matter of law as to Plaintiffs' claims arising under the Contract Clause and under 42 U.S.C. § 1983. *See Andrews v. Anne Arundel County, Maryland,* 931 F.Supp. 1255, 1267 (D.Md.1996) (holding that Contract Clause claim may not be asserted under 42 U.S.C. § 1983), *aff'd,* 114 F.3d 1175, 1997 WL 321573 (4th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 600, 139 L.Ed.2d 489 (1997). The federal claims having thus been eliminated from the case, I decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).