363 S.E.2d 90 (1987)
88 N.C. App. 218
Jesse R. SIMPSON, Richard D. Moore, on behalf of themselves and all others similarly situated
v.
NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, a corporation; Board of Trustees of the North Carolina Local Government Employees' Retirement System, a body politic and corporate; E.T. Barnes, Director of the Retirement System Divisions and Deputy Treasurer for the State of North Carolina (in his official capacity); Harlan E. Boyles, Treasurer of the State of North Carolina and Chairman of the Board of Trustees of the North Carolina Local Government Employees' Retirement System (in his official capacity); and the State of North Carolina.
No. 8710SC400.
Court of Appeals of North Carolina.
December 22, 1987.
*91 Daniels & Daniels, P.A. by Marvin Schiller, Research Triangle Park, for plaintiffs-appellants.
Atty. Gen. Lacy H. Thornburg by Norma S. Harrell, Asst. Atty. Gen., Raleigh, for defendants-appellees.
WELLS, Judge.
The question presented is whether the pension rights of vested members of the North Carolina Local Governmental Employees' Retirement System (Retirement System) may be made subject to adverse legislative modification without violation of U.S. Const. art. 1, § 10, cl. 1, prohibiting states from enacting any law "impairing the Obligation of Contracts." This is a case of first impression in North Carolina.[1]
The facts are not in dispute. Both plaintiffs are former firemen for the City of Greensboro who have qualified for disability benefits under the Retirement System. Mr. Simpson became a vested member[2] of the Retirement System by 6 August 1969 and qualified for disability benefits on 1 March 1983. Mr. Moore became a vested member of the Retirement System by 16 July 1978 and qualified for disability benefits on 1 January 1984. Under N.C.Gen. Stat. § 128-27(d3), which was in force from 1 July 1971 through 30 June 1982, a member of the Retirement System retiring on disability received a benefit calculated as if he had worked to the age of 65 years. *92 Further, members whose creditable service began prior to 1 July 1971, like plaintiffs in the present case, received no less than the allowance provided by prior law, G.S. § 128-27(d2).
On 9 October 1981, the General Assembly modified, effective 1 July 1982, Chapter 128 by adding G.S. § 128-27(d4), which provides as follows:
(d4) Allowance on Disability Retirement of Persons Retiring on or after July 1, 1982.Upon retirement for disability, in accordance with subsection (c) of this section on or after July 1, 1982, a member shall receive a service retirement allowance if he has qualified for an unreduced service retirement allowance; otherwise the allowance shall be equal to a service retirement allowance calculated on the member's average final compensation prior to his disability retirement and the creditable service he would have had had he continued in service until the earliest date on which he would have qualified for an unreduced service retirement allowance.
Thus, under the amended statute a member of the Retirement System retiring on or after 1 July 1982 receives either an unreduced service retirement allowance or an allowance calculated as if he had worked to the earliest date on which he would have been eligible for an unreduced benefit, basically either 30 years or age 65. This means that a member beginning creditable service at, for example, age 20, can no longer, upon disablement after vesting, receive a benefit calculated as if he had worked 45 years. Instead, he may claim no more service credit years than a person retiring on service retirement after a full career of 30 years. Obviously, members such as plaintiffs herein who began work prior to age 35, and/or members who can claim additional service credits such as military service, stand to receive, upon disablement after vesting, a smaller retirement allowance under the modified statute than under prior law. Mr. Moore presently receives $564.88 per month as his retirement benefit, whereas he would have received $717.08 under the prior statute. Mr. Simpson now receives $801.91 monthly, whereas under the antecedent statute his allowance would have been $1,182.82. The gravamen of plaintiffs' complaint is that they are entitled to have their disability retirement benefits calculated according to the more favorable formula in effect at the time they became vested members of the Retirement System.
Plaintiffs contend that an adverse change in the benefit structure after vesting constitutes an impairment of contractual rights. In response, defendants contend, first, that North Carolina case law either does not support plaintiffs' position, or controverts it, as in Griffin v. Bd. of Com'rs. of Law Officers' Retirement Fund, 84 N.C.App. 443, 352 S.E.2d 882, disc. rev. denied, 319 N.C. 672, 356 S.E.2d 776 (1987). Defendants claim Griffin stands for the proposition that the General Assembly can make changes in the disability retirement structure and apply those changes to members with vested rights who have not yet retired on disability retirement at the time the changes came into force.
Defendants further point out that the General Assembly has expressly retained, per G.S. § 128-38, "the right at any time and from time to time ... to modify or amend in whole or in part any or all of the provisions of the North Carolina Local Governmental Employees' Retirement System." Finally, defendants contend that even if the relationship between the Retirement System and plaintiffs is one of contract, and even assuming an impairment by virtue of the 1981 amendment, the impairment is nevertheless lawful because it is reasonable and necessary to serve an important public purpose.
We have looked to the case law of other jurisdictions to find guidance in deciding this difficult case and have encountered a kaleidoscope of multifarious and conflicting views. See, e.g., Annot., 52 A.L.R.2d 437 (1957). In a few states, the issue has been removed from the courts' province by constitutional amendment or by statutory enactment expressly providing that public employee pension plans give rise to contractual rights. Most of those courts which have confronted the question *93 presented by this case, or questions similar to the one presented here, have adopted one of five approaches, which we review briefly below.
First, a few jurisdictions still follow the traditional common law in holding that public employee pensions are gratuities creating no contractual rights until the member satisfies all his retirement requirements. According to this view, such pension benefits are mere expectancies, modifiable or revocable at the whim of the legislature. For examples of such cases see, e.g., Etherton v. Wyatt, 155 Ind.App. 440, 293 N.E.2d 43 (1973) and Creps v. Bd. of Firemen's Relief & Retirement Fund Trustees, 456 S.W.2d 434 (Tex.1970).
Apparently, a majority of courts have in recent years abandoned the common law gratuity theory in favor of an approach which accords more protection to such pension rights. The Minnesota case Christensen v. Mpls. Mun. Emp. Retire. Bd., 331 N.W.2d 740 (Minn.1983) represents the second approach reviewed here. In this case, the Supreme Court of Minnesota declared that "a public employee's interest in a pension is best characterized in terms of promissory estoppel." The court went on to imply in law a contract to enforce the state's promise of pension benefits that had been reasonably relied upon.
Third, a large number of states have construed public pension plans as giving rise to contractual rightseven in the absence of a clear statement of legislative intent to contract. See Pineman v. Oechslin, 494 F.Supp. 525 (D.Conn.1980), for cases cited therein. Some of these states have held that such pension rights vest unconditionally at the moment of employment. See, e.g., Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 541 (1965). Other states follow the so-called California rule according to which such pension rights, though contractual, may be modified by the legislature where necessary and reasonable, provided that any disadvantages to employees are offset by comparable new advantages. See, e.g. Allen v. Bd. of Admin., 34 Cal.3d 114, 192 Cal.Rptr. 762, 665 P.2d 534 (1983). Courts have generally been more likely to find vested contractual rights arising out of voluntary plans than out of mandatory ones and, further, have generally shown themselves more solicitous of employees who have already retired than of those who have not. See Annot., 52 A.L.R.2d, supra, at 441-43.
Fourth, at least two jurisdictions, however, have stubbornly rejected the contractual approach. In Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 41 N.J. 391, 197 A.2d 169 (1964), the Supreme Court of New Jersey held, in an opinion authored by Chief Justice Weintraub, that the provisions of a pension plan, like other terms and conditions of public service employment, "rest in legislative policy rather than contractual obligation, and hence may be changed except of course insofar as the State Constitution specifically provides otherwise." The court stated that legislative acts do not give rise to contractual rights abridging the power of succeeding legislatures to make revisions for the good of all unless the statute "expressly calls for the execution of a written contract or confirms a settlement of a dispute." The Supreme Court of Connecticut has recently embraced the Spina approach in Pineman v. Oechslin, 195 Conn. 405, 488 A.2d 803 (1985). The Connecticut court conceded a "seductive appeal in the contract-oriented approaches" but refused to find that a statute gives rise to contractual rights absent an unmistakeable expression of legislative intent to contract. The court summed up as follows:
Upon examination of the case law in this area, it becomes clear that the contract approach plays havoc with basic principles of contract law, traditional contract clause analysis and, most importantly, the fundamental legislative prerogative to reserve to itself the implicit power of statutory amendment and modification.
After having carefully considered both relevant North Carolina case law and the relative merits and weaknesses of the four approaches reviewed above, we have decided to hold that the relationship between plaintiffs and the Retirement System is one of contract. Our Supreme Court held in Bridges v. Charlotte, 221 N.C. 472, *94 20 S.E.2d 825 (1942) that the retirement benefits received by state employees from the retirement fund there challenged were payments of salary for services rendered. Twenty years later, in Insurance Co. v. Johnson, Comm'r of Revenue, 257 N.C. 367, 126 S.E.2d 92 (1962), our Supreme Court stated: "A pension paid a governmental employee ... is a deferred portion of the compensation earned for services rendered." If a pension is but deferred compensation, already in effect earned, merely transubstantiated over time into a retirement allowance, then an employee has contractual rights to it. The agreement to defer the compensation is the contract. Fundamental fairness also dictates this result. A public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services, and continually promised him over many years, will not be removed or diminished. Plaintiffs, as members of the North Carolina Local Governmental Employees' Retirement System, had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.
But to hold that Article 3 of G.S. § 128 gives rise to contractual rights does not dispose of the question presented. As Maryland State Teachers Ass'n v. Hughes, 594 F.Supp. 1353 (D.Md.1984) explains, a state does not automatically run afoul of the Contract Clause of the U.S. Constitution by impairing pension rights. In Hughes, which represents the fifth and final approach reviewed here, a class of public school teachers and other state employees brought suit alleging that Maryland's 1984 "Pension Reform Act" violated the Contract Clause of the U.S. Constitution. Relying on U.S. Supreme Court Contract Clause jurisprudence, the Hughes court held that to the extent, if any, the challenged Act had impaired purported contract rights, the impairment was constitutional because it was reasonable and necessary to serve an important public purpose. We adopt the Hughes approach because it accords some protection to plaintiffs' pension rights without substantially derogating from the General Assembly's prerogatives.
To be sure, on its face the Contract Clause of the U.S. Constitution absolutely prohibits states from impairing contractual obligations. However, the Supreme Court has recognized that states may impair contracts in the exercise of their police power in order to protect the general interests of the commonwealth.[3] In United States Trust Co. v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), the Supreme Court established a tripartite test for deciding cases involving alleged Contract Clause infringements when a state is a party to the contract.[4] The reviewing court must first ascertain whether a contractual obligation arose under the statute. Second, the court must determine if the state's actions impaired an obligation of the state's contract. Third, the court must determine whether the impairment, if any, was "reasonable and necessary to serve an important public purpose."
We have held, supra, that Article 3 of Chapter 128 of the North Carolina General Statutes creates contractual obligations. We also find that rights arising under this statute were impaired inasmuch as plaintiffs stand to suffer significant reductions in their retirement allowances as a result of the legislative amendment under challenge. But we conclude that the question of whether the amendment at issue is violative of the Contract Clause because it is reasonable and necessary to serve an important state interest has not been properly resolved in the court below.
Mr. E.T. Barnes, Deputy Treasurer and Director of the Retirement Systems Division of the North Carolina Department of State Treasurer, has elaborated the State's interest in the challenged amendment in his *95 affidavit contained in the Record, from which we quote the following pertinent part:
From the Retirement System's standpoint, an unreduced retirement, or one normally based on 30 years or age 65, is a full career. Prior to the amendment to the disability retirement provisions in 1982, between 15 and 20% of our retirements had become disability retirements. A significant number of those were coming in the later years for people who were already eligible to retire on service retirement and, in all probability, would have been contemplating service retirement anyway. The possibility of disability retirement appeared to be a device by which people were able to improve their retirement allowances because of the relatively frequent types of health problems which appear in later years. There seemed to be little justification for allowing a disability to be extended as if the person had worked until age 65 while another person, with the same service, would be considered to have retired at a normal career retirement point.
Mr. Barnes' affidavit shows that the changes in the System's disability retirement requirements challenged by plaintiffs were made primarily to correct inequities in the System. We are not persuaded that this explanation demonstrates or reflects that these changes were reasonable and necessary to serve an important state interest. We perceive that defendants' burden to show that there are no genuine issues as to any material fact in this action and that defendants are entitled to judgment as a matter of law has not been met. See N.C.Gen.Stat. § 1A-1, Rule 56 of the Rules of Civil Procedure. Accordingly, we hold that summary judgment for defendants was improvidently entered and remand for further proceedings consistent with this opinion.
Reversed and remanded.
JOHNSON and COZORT, JJ., concur.
NOTES
[1] In the case Harrill v. Retirement System, 271 N.C. 357, 156 S.E.2d 702 (1967) our Supreme Court stated as follows: "We find it unnecessary to determine on this record to what extent, if any, plaintiffs' rights to their retirement allowances became vested so that the General Assembly could not by legislation constitutionally impair such rights."
[2] In North Carolina the right of members of the Retirement System to retirement benefits vests after five years of creditable service. See G.S. § 128-27(a)(1) and (c).
[3] See, e.g., Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). See generally B. Schwartz, A Commentary on the Constitution of the United States, Part II: The Rights of Property 266-306 (1965).
[4] Where the contract is between private parties the test is somewhat different. See United States Trust, 431 U.S. at 25, 97 S.Ct. at 1519. See generally Note, A Process-Oriented Approach to the Contract Clause, 89 Yale L.J. 1623 (1980); Note, Rediscovering the Contract Clause, 97 Harv.L.Rev. 1414 (1984).