IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-263

Filed 19 November 2024

Wake County, No. 22CVS4566-910

MICHAEL HUGHES, on Behalf of Himself and Others Similarly Situated, Plaintiff,

v.

BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM, a North Carolina body politic and corporate; TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA; CONSOLIDATED JUDICIAL RETIREMENT SYSTEM OF NORTH CAROLINA; LEGISLATIVE RETIREMENT SYSTEM OF NORTH CAROLINA; STATE TREASURER Dale R. Folwell, ex officio CHAIR OF THE BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM (in his official capacity); and STATE OF NORTH CAROLINA, Defendants.

Appeal by defendant from judgment entered 4 December 2023 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 23 October 2024.

> *Millberg Coleman Bryson Phillips Grossman, PLLC, by Matthew E. Lee, Mark Sigmon, Jeremy R. Williams, and Jacob M. Morse, and Maginnis Howard, PLLC, by Edward H. Maginnis and Karl S. Gwaltney, for the plaintiff-appellee.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney Generals Mary W. Scruggs, and Olga Vysotskaya de Brito, for the defendant-appellants.*

TYSON, Judge.

Appeal by State Treasurer Dale R. Folwell, in his official capacity as *ex officio* chair of the Board of Trustees Teachers' and State Employees' Retirement System; the Board of Trustees of the Teachers' and State Employees' Retirement System,

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

Teachers' and State Employees' Retirement System of North Carolina; Consolidated Judicial Retirement System of North Carolina; Legislative Retirement System of North Carolina; and, the State of North Carolina (collectively "Defendants") from orders denying their motions to dismiss and for judgment on the pleadings. We reverse and remand.

## I.   Background

Michael Hughes ("Plaintiff") was employed in 1994 by the State as a mechanical engineer for the North Carolina Department of Administration. Plaintiff retired in 2012, and he began drawing $1,823.53 monthly in retirement benefits from the Teachers' and State Employees' Retirement System ("TSERS").

Plaintiff has received seven cost of living adjustments ("COLAs") by act of the General Assembly since retiring in 2012:

| Year | Percent increase | Legal Source |
|------|------------------|--------------|
| 2014 | 1% in perpetuity | S.L. 2014-100, § 35.14.(a) |
| 2016 | 1.6% one-time | S.L. 2016-94, § 36.21.(a) |
| 2017 | 1% allowance | S.L. 2017-57, § 35.19.A.(a) |
| 2018 | 1% one-time | S.L. 2018-5, § 35.28.(a) |
| 2021 | 2% one-time | S.L. 2021-180, § 39.23.(a) |
| 2022 | 3% one-time | S.L. 2022-74, § 39.20.(a) |
| 2023 | 4% one-time | S.L. 2023-134, § 39.26.(e) |

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

Plaintiff filed a class action complaint on behalf of himself and other similarly-situated plaintiffs against Defendants on 13 April 2022, seeking: (1) a declaratory judgment holding N.C. Gen. Stat. § 135-5 (o) (2023) "entitles Plaintiff to cost-of-living adjustments comparable to those of active state employees" and the requirements of N.C. Gen. Stat. § 135-5(o) have not been met; (2) alleging a violation of N.C. Gen. Stat. § 135-5 based on the "inadequate number of times" and amounts Defendants have requested for cost-of-living adjustments for state retirees; and, (3) alleging a breach of Defendants' employment contract. *See* N.C. Gen. Stat. § 1A-1, Rule 23 (2023).

Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of our Rules of Civil Procedure and for judgment on the pleadings pursuant to Rule 12(c) of our Rules of Civil Procedure on 25 September 2023. *See* N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(c) (2023). Defendants argued Plaintiff's complaint is barred by sovereign immunity. The trial court heard arguments on Defendants' motions on 9 November 2023 and by order entered 4 December 2023 it denied Defendants' motions. The trial court also ordered *sua sponte* for Plaintiff to add a judicial retirement system plaintiff and a legislative retirement system plaintiff within 90 days. Defendants appeal.

## II. Jurisdiction

### A. Defendants' Notice of Appeal

Defendants noticed their appeal on 2 January 2024. Defendants' notice of

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

appeal did not list the Consolidated Judicial Retirement System of North Carolina ("CJRS") in the body of the Notice of Appeal. *See* N.C. R. App. P. 3(d) ("Content of Notice of Appeal. The notice of appeal required to be filed and served . . . shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record."). Defendants filed a notice of appeal naming CJRS in the appeal.

"In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure." *Stephenson v. Bartlett*, 177 N.C. App. 239, 241, 628 S.E.2d 442, 443 (2006) (citing *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000).

"The provisions of Rule 3 are jurisdictional, and failure to follow the requirements thereof requires dismissal of an appeal." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737 (1997) (citation omitted). However, this Court in *Stephenson v. Bartlett,* 177 N.C. App. 239, 242, 628 S.E.2d 442, 444 (2006), recognized "[m]istakes by appellants in following all the subparts of Appellate Procedure Rule 3(d) have not always been fatal to an appeal." "[A] mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Smith v. Indep. Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979) (citation omitted) (emphasis supplied).

Failure to comply with Rule 3(d) does not warrant dismissal of an appeal "where the plaintiff's intent to appeal can be fairly inferred and the [appellees] are not misled by the [appellant's] mistake. *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011) (citation omitted). This Court further held: "The 'fairly inferred' doctrine ensure[s] that a violation of Rule 3(d) results in dismissal only where the appellee is prejudiced by the appellant's mistake." *Id.*

In *Phelps Staffing, LLC,* the appellant did not designate the court to which the appeal was taken or the judgment or order from which the appeal was taken. *Id.* at 410-11, 720 S.E.2d at 791. This Court has not applied the "fairly inferred" doctrine to a violation of Rule 3(d) where an appellant fails to designate an appellant in the body of the appeal. Defendants timely filed notice of appeal to this Court.

Plaintiff could fairly infer CJRS' intent to appeal to this Court. Plaintiff concedes he was not misled or prejudiced by Defendants' error. Plaintiff agrees "all Defendants appealed distinction between CJRS and the other Defendants as to its entitlement to sovereign immunity" and the omission is immaterial. Defendants' mistake in failing to name CJRS in its notice of appeal does not warrant dismissal of their appeal. *Id.*

**B. Interlocutory Appeal**

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

Sovereign immunity shields the State of North Carolina and its agencies with immunity from suit, absent consent or waiver of immunity. *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). Sovereign immunity is "more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Craig v. New Hanover Cty. Bd. Of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 86 L. Ed. 2d 411, 424 (1985)).

Defendants appeal from the trial court's denial of their Rule 12(c) motion for judgment on the pleadings and Rule 12(b)(1) motion to dismiss based on sovereign immunity. The trial court's order is interlocutory. "As a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation omitted). The reason for "[t]he rule against interlocutory appeals seeks to prevent fragmentary, premature and unnecessary appeals by allowing the trial court to bring a case to final judgment before its presentation to the appellate courts." *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669 (2000) (citation omitted).

Interlocutory orders can be immediately appealable "when the appeal involves a substantial right of the appellant[,] and the appellant will be injured if the error is not corrected before final judgment." *N.C. Dep't of Transp. V. Stagecoach Vill.*, 360 N.C. 46, 47-48, 619 S.E.2d 495, 496 (2005) (citations omitted). *See also* N.C. Gen. Stat. § §1-277(a) and 7A-27(b)(3)(a) (2023).

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

"Orders denying dispositive motions based on the defenses of governmental and public official's immunity affect a substantial right and are immediately appealable." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 653, 543 S.E.2d 901, 903 (2001) (citation omitted). The denial of a motion for judgment on the pleadings "on grounds of sovereign immunity is immediately appealable, though interlocutory, because it represents a substantial right, as the entitlement is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Craig*, 363 N.C. at 338, 678 S.E.2d at 354 (citation, quotation marks, and alterations omitted).

"Nevertheless, this Court has declined to address interlocutory appeals of a lower court's denial of a Rule 12(b)(1) motion to dismiss despite the movant's reliance upon the doctrine of sovereign immunity." *Green v. Kearney*, 203 N.C. App. 260, 265-66, 690 S.E.2d 755, 760 (2010).

This distinction between personal and subject matter jurisdiction is important in our State's courts because N.C. Gen. Stat. § 1-277(b) (2023) "allows the immediate appeal of a denial of a Rule 12(b)(2) motion but not the immediate appeal of a denial of a Rule 12(b)(1) motion." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327-28, 293 S.E.2d 182, 184 (1982) ("Although the federal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) motion regarding subject matter jurisdiction or a Rule 12(b)(2) motion regarding jurisdiction over the person, the distinction becomes crucial in North

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

Carolina because G.S. 1-277(b) allows the immediate appeal of a denial of a Rule 12(b)(2) motion but not the immediate appeal of a denial of a Rule 12(b)(1) motion.").

The Supreme Court of North Carolina in *Teachy* did not determine whether sovereign immunity is an issue of subject matter or personal jurisdiction. This Court has held because "N.C. Gen. Stat. § 1-277(b) allows only for an immediate appeal of the denial of a motion to dismiss based on personal jurisdiction, not subject matter jurisdiction" that "an appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction, and is therefore immediately appealable." *Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 384-85, 677 S.E.2d 203, 207 (2009) (citing *Data Gen. Corp. v. City of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245-46 (2001)). This Court further held the "appeal from the denial of [a] Rule 12(b)(1) motion based on sovereign immunity is neither immediately appealable pursuant to N.C. Gen. Stat. § 1-277(b), nor affects a substantial right." *Id.* at 385, 677 S.E.2d at 207.

Defendants also seek review of the trial court's denial of their Rule 12(c) motion for judgment on the pleadings asserting sovereign immunity from Plaintiff's action. Defendants' claim is interlocutory and involves a substantial right. *Stagecoach Vill.*, 360 N.C. at 47-48, 619 S.E.2d at 496.

This Court possesses appellate jurisdiction to review Defendants' argument. In the exercise of our discretion, we dismiss Defendants' petition for writ of *certiorari* as moot.

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

### III.  Issues

Defendants argue the trial court erred in denying their motion for judgment on the pleadings based upon sovereign immunity.

### IV.  Standard of Review

"Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Groves v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (internal citations and quotations omitted). "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citations omitted).

This Court reviews a grant of a motion for judgment on the pleadings *de novo*. *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 764 (2008).

### V.  Sovereign Immunity

"Sovereign immunity is a legal principle which states in its broadest terms that the sovereign will not be subject to any form of judicial action without its express consent." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 535, 299 S.E.2d 618, 625 (1983) (citation omitted). "It has long been established that an action cannot be maintained against the State of North Carolina *or an agency thereof* unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified.*" *Id.* at 534, 299 S.E.2d at 625 (citations omitted). "Sovereign

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

immunity embraces the State and its agencies[.]" *Est. of Graham v. Lambert*, 385 N.C. 644, 651-52, 898 S.E.2d 888, 896 (2024).

> It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit. By application of this principle, a subordinate division of the state or an agency exercising statutory governmental functions may be sued only when and as authorized by statute.

*Can Am S., LLC v. State*, 234 N.C. App. 119, 125, 759 S.E.2d 304, 309, *disc. review denied*, 367 N.C. 791, 766 S.E.2d 624 (2014) (citations and internal quotation marks omitted).

Defendants allege sovereign immunity bars Plaintiff's breach of contract claim, declaratory judgment action, and Plaintiff's purported N.C. Gen. Stat. § 135-5 claim. N.C. Gen. Stat. § 135-5 (2023).

### A. Breach of Contract

Plaintiff alleges when he "entered into employment with the [S]tate, all benefits and compensation set by statute existing at that time are meant to be read into each employee's contract." Defendant asserts the discretionary adjustments made pursuant to N.C. Gen. Stat. § 135-5(o) does not vest a contractual right to cost-of-living adjustment to a retirement benefit.

This Court has long held employees have a vested contractual right to retirement benefits, which are presently earned, but are deferred compensation:

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

> A pension paid a governmental employee . . . is a deferred portion of the compensation earned for services rendered. If a pension is but deferred compensation, already in effect earned, merely transubstantiated over time into a retirement allowance, then an employee has contractual rights to it. The agreement to defer the compensation is the contract. Fundamental fairness also dictates this result. A public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services, and continually promised him over many years, will not be removed or diminished. Plaintiffs, as members of the North Carolina Local Governmental Employees' Retirement System, had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.

*Simpson v. N.C. Local Gov't Emps.'s Ret. Sys.*, 88 N.C. App. 218, 223-24, 363 S.E.2d 90, 94 (1987) (citation and internal quotation marks omitted), *aff'd per curiam*, 323 N.C. 362, 372 S.E.2d 559 (1988).

Our Supreme Court and this Court have re-affirmed the central holding in *Simpson* by concluding members of a retirement system have "a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested," in disability plan and in pensions. *Id.*; *See Faulkenbury v. Teachers' & State Emps.'s Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997) (plaintiffs had a vested contractual right to disability retirements benefits); *Miracle v. N.C. Local Gov't Employees Retirement Sys.*, 124 N.C. App. 285, 477 S.E.2d 204 (1996) (plaintiffs had a vested contractual right to pension terms at time of vesting).

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

Our Supreme Court re-affirmed this principle of a vested right in *Bailey v. State*, holding "[t]his respect for *individual* rights has manifested itself through the expansion of situations in which courts have held contractual relationships to exist, and in which they have held these contracts to have been impaired by subsequent state legislation." *Bailey v. State*, 348 N.C. 130, 143, 500 S.E.2d 54, 61 (1998) (emphasis supplied).

Plaintiff seeks a proactive and absolute contractual right to cost of living increases accorded to active employees. Here, and unlike in *Bailey*, *Miracle*, *Faulkenbury*, and *Simpson*, Defendants have not demonstrated any vested right either existed or was hindered. Plaintiff has a "contractual right to rely on the terms of the retirement plan as these terms existed *at the moment their retirement rights became vested"* not a proactive or future vested right to cost of living increases. *Simpson*, 88 N.C. App. at 224, 363 S.E.2d at 94 (emphasis supplied).

The dissenting opinion argues the trial court correctly denied Defendants' motion asserting Plaintiff's claims are barred by "sovereign immunity." The gist of its argument asserts Plaintiff does not have a contractual right to COLA increases under N.C. Gen. Stat. § 135-5, and Defendants otherwise have no obligation to fund COLA increases based upon the plain language of N.C. Gen. Stat. § 135-5. N.C. Gen. Stat. § 135-5.

Technically, a waiver of sovereign immunity may not be the appropriate argument. Plaintiff asserts his right to retirement benefits arises under his

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

employment contract with the State, and the well-settled law that sovereign immunity has been waived when the State has entered into a contract. *See, e.g., Smith v. State*, 289 N.C. 303 (1976). More specifically, the dispute concerns, in relevant part, whether the COLA language in N.C. Gen Stat. § 135-5 is part of Plaintiff's contract. In deciding on Defendants' Rule 12(c) motion on the pleadings, it is appropriate for us to review that statute. *Id.*

Even if "sovereign immunity" is technically not the correct theory, Defendants all along have conceded Plaintiff has a contractual relationship with the State, but have also argued Plaintiff's claims should be dismissed based upon the theories the language in N.C. Gen. Stat. § 135-5(o) is not a part of Plaintiff's contract and, otherwise, no statutory or contractual obligation exists mandating our General Assembly to fund Plaintiff's retirement COLAs based on the formula set by that body in N.C. Gen Stat. 135-5(o). *Id.*

### 1. N.C. Gen. Stat. § 135-5(o)

Defendant asserts the language of N.C. Gen. Stat. § 135-5(o) shows the General Assembly did not intend to contractually bind Defendants. N.C. Gen. Stat. § 135-5(o). Plaintiff contends the statute creates a binding contractual obligation, mandating when retirees are provided COLAs, and they must be comparable to the cost-of-living adjustments provided to active employees. N.C. Gen. Stat. § 135-5(o) provides:

> **Post-Retirement Increases in Allowances.** — As of December 31, 1969, the ratio of the Consumer Price Index to such index one year earlier shall be determined. If such

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

ratio indicates an increase that equals or exceeds three per centum (3%), each beneficiary receiving a retirement allowance as of December 31, 1968, shall be entitled to have his allowance increased three per centum (3%) effective July 1, 1970.

As of December 31, 1970, the ratio of the Consumer Price Index to such index one year earlier shall be determined. If such ratio indicates an increase of at least one per centum (1%), each beneficiary on the retirement rolls as of July 1, 1970, shall be entitled to have his allowance increased effective July 1, 1971 as follows:

| *Increase in Index* | *Increase in Allowance* |
|---|---|
| 1.00 to 1.49% | 1% |
| 1.50 to 2.49% | 2% |
| 2.50 to 3.49% | 3% |
| 3.50% or more | 4% |

As of December 31, 1971, an increase in retirement allowances shall be calculated and made effective July 1, 1972, in the manner described in the preceding paragraph. As of December 31 of each year after 1971, the ratio (R) of the Consumer Price Index to such index one year earlier shall be determined, and each beneficiary on the retirement rolls as of July 1 of the year of determination shall be entitled to have his allowance increased effective on July 1 of the year following the year of determination by the same percentage of increase indicated by the ratio (R) calculated to the nearest tenth of one per centum, but not more than four per centum (4%); provided that any such

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

increase in allowances shall become effective only if the additional liabilities on account of such increase do not require an increase in the total employer rate of contributions.

The allowance of a surviving annuitant of a beneficiary whose allowance is increased under this subsection shall, when and if payable, be increased by the same per centum.

Any increase in allowance granted hereunder shall be permanent, irrespective of any subsequent decrease in the Consumer Price Index, and shall be included in determining any subsequent increase.

For purposes of this subsection, Consumer Price Index shall mean the Consumer Price Index (all items — United States city average), as published by the United States Department of Labor, Bureau of Labor Statistics.

Notwithstanding the above paragraphs, retired members and beneficiaries may receive cost-of-living increases in retirement allowances if active members of the system receive across-the-board cost-of-living salary increases. Such increases in post-retirement allowances shall be comparable to cost-of-living salary increases for active members in light of the differences between the statutory payroll deductions for State retirement contributions, Social Security taxes, State income withholding taxes, and federal income withholding taxes required of each group. The increases for retired members shall include the cost-of-living increases provided in this section. The cost-of-living increases allowed retired and active members of the system shall be comparable when each group receives an increase that has the same relative impact upon the net disposable income of each group.

N.C. Gen. Stat. § 135-5(o).

Defendants assert the first sentence of the fourth paragraph: "Notwithstanding the above paragraphs, retired members and beneficiaries *may*

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

*receive* cost-of-living increases in retirement allowances if active members of the system receive across-the-board cost-of-living salary increases." does not provide a contractual right. *Id.* (emphasis supplied). Plaintiffs assert the second sentence provides for "comparability" between retirees and active State employee, "Such increases in post-retirement allowances shall be comparable to cost-of-living salary increases for active members in light of the differences between the statutory payroll deductions for State retirement contributions, Social Security taxes, State income withholding taxes, and federal income withholding taxes required of each group." *Id.* To address the parties' respective arguments concerning the meaning and applicability of N.C. Gen. Stat. § 135-5(o), we are guided by several well-established principles and precedents of statutory construction.

### 2. Canons of Statutory Construction

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citation omitted). "The best indicia of that intent are the language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citation omitted).

As is held and re-stated many times: "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010). "The use of the word 'may'

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

has been interpreted by our Supreme Court to connote discretionary power, rather than an obligatory one." *Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. 245, 250-51, 652 S.E.2d 713, 717 (2007) (citing *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 402-03, 584 S.E.2d 731, 737 (2003); *In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978); *Felton v. Felton*, 213 N.C. 194, 198, 195 S.E.2d 533, 536 (1938)).

"It is well established that the word 'shall' is generally imperative or mandatory when used in our statutes." *Morningstar Marinas/Eaton Ferry, LLC v. Warren Cty.*, 368 N.C. 360, 365, 777 S.E.2d 733, 737 (2015) (citation and internal quotation marks omitted). "The word 'shall' is defined as 'must' or used in laws, regulations, or directives to express what is mandatory." *Internet E., Inc. v. Duro Commc'ns Inc.*, 146 N.C. App. 401, 405-06, 553 S.E.2d 84, 87 (2001) (citation omitted).

"[S]tatutes in *pari materia* must be read in context with each other." *Cedar Creek Enters. Inc. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976) (citation omitted). "Interpretations . . . [which] create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (internal quotation marks, citations, and alterations omitted).

Further, our Supreme Court has repeatedly held, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control[.]" *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274,

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

277 (2005) (citation omitted).

Here, the word "may" is the auxiliary verb to the main verb, "receive." The plain language of this sentence stating retired members "may receive increases in retirement allowance" is discretionary and are not mandatory. N.C. Gen. Stat.§ 135-5(o). The second sentence, explaining the prior sentence states the increases "shall be comparable to cost-of-living salary increases for active members" provides the amount of the increases, *if any,* appropriated by the General Assembly. These two sentences read together plainly provide retirees "may receive" cost-of-living increases, and, if and when appropriated, they shall be comparable to those of active employees under the statutory formulas. *Id.* The trial court erred in denying Defendants' motion for judgment on the pleadings. *Id.*

### 3. Persuasive Authorities

Courts in other jurisdictions have held a retiree has no vested right to COLAs:

> Almost every court to have considered the issue has rejected claims that statutory pension schemes and provisions about COLAs created contract rights subject to constraints of the Contract Clause. *See, e.g., Me. Ass'n of Retirees*, 758 F.3d at 31 (finding that the statutory language was at best ambiguous, and therefore the retirees could not meet their burden to show that the legislature unmistakably intended to create contractual rights to COLAs according to the formula in effect at the time they retired); *Am. Fed'n of Teachers-N.H. v. State of N.H.*, 167 N.H. 294, 111 A.3d 63, 72 (N.H. 2015) (pension plan members did not have vested rights to a COLA where the court was "not persuaded that the statutory language established a contractual obligation to provide a COLA."); *Justus v. State*, 336 P.3d 202, 211-12, 2014 CO 75 (Colo.

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

2014) (statute does not contain "contractual or durational language stating or suggesting a clear legislative intent to bind itself, in perpetuity, to paying . . . a specific COLA formula"); *Bartlett v. Cameron*, 2014- NMSC 002, 316 P.3d 889, 895 (N.M. 2013) (finding that several amendments to the statute's COLA provision showed the legislature's intent to promote public policy, and not a clear and unambiguous intent to protect a vested contract right to paying a specific COLA).

Only in very limited circumstances have courts found that state pensioners had a right to a specific COLA formula. For example, in *Hon. Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, 320 P.3d 1160 (Ariz. 2014), the Arizona Supreme Court looked to the state's constitution, which said that public retirement benefits "shall not be diminished or impaired." *Id.* at 1163 (quoting Ariz. Const. art. XXIX, § 1(C)). Based on that provision, the court held that changes to the statutory formula for pension benefit increases violated the state constitution, and rejected the argument that the term "benefit" "only includes the right to receive payments in the amount determined by the most recent calculation." *Id.* at 1165.

Rather, the court explained, the "benefit" protected by the state constitution's Pension Clause "necessarily includes the right to use the statutory formula" and that formula included COLA increases. *Id.* at 1166. The court held that the plaintiff (a retired judge) "has a right in the existing formula by which his benefits are calculated as of the time he began employment and any beneficial modifications made during the course of his employment." *Id.* Therefore, the court concluded, the increase in COLA benefits was a "benefit" for purposes of the constitution's Pension Clause. *Id.*

*Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 603-04 (6th Cir. 2016).

*See also NARFE v. Horner*, 633 F. Supp. 511 (D.D.C. 1986) (dismissing complaint by retiree alleging contractual right to COLA increases prescribed by statute); *Zucker v.*

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

*United States*, 758 F.2d 637 (Fed. Cir. 1985) (affirming summary judgment against retirees claiming right to COLA increases); *Wash. Educ. Ass'n. v. Dep't of Ret. Sys.,* 332 P.3d 439 (Wash. 2014) (holding that change in COLA statute did not impair contract rights of retirees); *Berg v. Christie*, 137 A.3d 1143 (N.J. 2016) (same). Plaintiff's argument is overruled.

## B. Waiver

Defendants further and alternatively argue the trial court erred in denying their motion for judgment on the pleadings because Plaintiff's declaratory judgment action is barred by sovereign immunity. Defendants assert nothing contained in the Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 to 1-267 (2023) is a waiver of sovereign immunity.

Sovereign immunity is not waived by the Declaratory Judgment Act. As held above no contractual right exists nor is there any waiver of sovereign immunity proven. The trial court erred in denying Defendants' motion for judgment on the pleadings.

## C. N.C. Gen. Stat. § 135-5

Defendants also argues the trial court erred in denying their motion for judgment on the pleadings for Plaintiff's claims under N.C. Gen. Stat. § 135-5(n) (2023). N.C. Gen. Stat. § 135-5(n) provides:

> No action shall be commenced against the State or the Retirement System by any retired member or beneficiary respecting any deficiency in the payment of benefits more

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

than three years after such deficient payment was made, and no action shall be commenced by the State or the Retirement System against any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after such overpayment was made. This subsection does not affect the right of the Retirement System to recoup overpaid benefits as provided in G.S. 135-9.

*Id.* Plaintiffs assert this statute is a waiver of sovereign immunity. While this section provides a statute of limitations for actions brought, it does not waive immunity, establish nor provide a cause of action for a pro-active, or an absolute contractual right to cost of living increases for retirees. *Id.* This section provides a statute of limitations for asserting underpayment of vested contractual rights. As held above, Plaintiff has "contractual right to rely on the terms of the retirement plan as those terms existed at the moment their retirement rights became vested" and not a proactive vested right to cost of living increases. *Simpson*, 88 N.C. App. at 224, 363 S.E.2d at 94. The trial court erred in denying Defendants' motion for judgment on the pleadings. N.C. Gen. Stat. § 1A-1, Rule 12(c).

## VI. Conclusion

This interlocutory appeal is not dismissed and is properly before us. Defendants properly pled and asserted sovereign immunity as an absolute bar to Plaintiff's claims. The trial court erred in denying Defendants' motion for judgment on the pleadings.

Neither N.C. Gen. Stat. §§ 135-5(o) nor 135-5(n) create a pro-active vested right

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*Opinion of the Court*

to COLAs for retirees or active employees. The trial court erred in denying Defendants' motions to dismiss. N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(c). The order of the trial court is reversed, and this cause is remanded for entry of dismissal of Plaintiff's claims with prejudice. *It is so ordered.*

REVERSED AND REMANDED.

Chief Judge DILLON concurs.

Judge HAMPSON dissents by separate opinion.

No. COA24-263 – *Hughes v. Bd. of Trustees Teachers' & State Emps.' Ret. Sys.*

HAMPSON, Judge, dissenting.

The sole issue properly before this Court is whether Plaintiff's claims are barred by sovereign immunity based on the face of the pleadings.[1]  They are not.

Our Supreme Court has held sovereign immunity is implicitly waived by the State when the State enters into a contract with a private party.

> We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract. Thus, in this case, and in causes of action on contract arising after the filing date of this opinion, 2 March 1976, the doctrine of sovereign immunity will not be a defense to the State. The State will occupy the same position as any other litigant.

*Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423–24 (1976).

Here, Plaintiff alleges—and Defendants deny—he entered into an employment contract with the State and fulfilled his obligations under the contract by working for the State for the requisite number of years.  As part of that contract, Plaintiff alleges all retirement benefits and compensation provided by statute existing at the time he entered the employment contract are meant to be read into the employment contract. Plaintiff further alleges Defendants acted in breach of that contract by acting contrary to the statutory mandate of N.C. Gen. Stat. § 135-5(o).  Plaintiff's pleading

---

[1] This is the only substantial right advanced by Defendants.  Defendants make no argument any other aspect of their 12(c) motion is before this Court.

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*HAMPSON, J., dissenting*

is sufficient, at this stage, to survive Defendants' defense of sovereign immunity.

Indeed, as the majority recognizes, employees of the State have a vested contractual right in their existing statutorily provided retirement benefits. "[A]t the time the plaintiffs started working for the state or local government, the statutes provided what the plaintiffs' compensation in the way of retirement benefits would be. The plaintiffs accepted these offers when they took the jobs. This created a contract." *Faulkenbury v. Tchrs.' & State Emps.' Ret. Sys. of N. Carolina*, 345 N.C. 683, 690, 483 S.E.2d 422, 427 (1997).

Specific to this case, Plaintiff contends Defendants are in breach of N.C. Gen. Stat. § 135-5(o) (2023), which addresses post-retirement increases in allowances. In relevant part, the statute provides:

> Notwithstanding the above paragraphs, retired members and beneficiaries may receive cost-of-living increases in retirement allowances if active members of the system receive across-the-board cost-of-living salary increases. Such increases in post-retirement allowances shall be comparable to cost-of-living salary increases for active members in light of the differences between the statutory payroll deductions for State retirement contributions, Social Security taxes, State income withholding taxes, and federal income withholding taxes required of each group. The increases for retired members shall include the cost-of-living increases provided in this section. The cost-of-living increases allowed retired and active members of the system shall be comparable when each group receives an increase that has the same relative impact upon the net disposable income of each group.

N.C. Gen. Stat. § 135-5(o) (2023).

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*HAMPSON, J., dissenting*

Contrary to the majority's assertion, Plaintiff is not "seek[ing] a proactive and absolute contractual right to cost of living increases."  Indeed, Plaintiff agrees there is no guaranteed right to such cost-of-living increases under this provision.  Rather, Plaintiff contends more narrowly that this statutory provision requires that *if* retired members and beneficiaries receive a cost-of-living increase under this provision, that increase must be "comparable" to the cost-of-living increase provided as across-the-board cost-of-living salary increases to active members.  This is consistent with the plain language of the statute, which provides: "Such increases in post-retirement allowances *shall* be comparable to cost-of-living salary increases for active members in light of the differences between the statutory payroll deductions for State retirement contributions, Social Security taxes, State income withholding taxes, and federal income withholding taxes required of each group." *Id.* (emphasis added).  The statute goes on to establish that "[t]he cost-of-living increases allowed retired and active members of the system shall be comparable when each group receives an increase that has the same relative impact upon the net disposable income of each group." *Id.*  It is these mandatory provisions Plaintiffs contend Defendants have breached by failing to provide cost-of-living increases that are "comparable."[2]

---

[2] To be fair, it is true that Plaintiff's Complaint alleges both that Defendants violated the statute by "the inadequate number of times" and "the inadequate amount of increase" in benefits Defendant requested for retirees. **[R p 12].**  However, merely alleging alternate theories does not subject Plaintiff's Complaint to a sovereign immunity defense.  Indeed, taken as a whole, Plaintiff's Complaint is more fairly read as challenging Defendants' compliance with the comparability

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*HAMPSON, J., dissenting*

Whether or not the contractual terms should be interpreted as Plaintiff contends or whether Defendants have complied with or breached these contractual provisions is simply not before us. Any declaration of what the disputed terms mean and whether the State has acted in violation of the statute or in breach of the contract should first be resolved by the trial court. The majority errs in delving into the merits of Plaintiff's contract-based claims at this stage[3]:

> This Court has consistently held that we are not to consider the merits of a claim when addressing the applicability of sovereign immunity as a potential defense to liability. *See Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 558 548 S.E.2d 788, 793 (2001) (noting that, when considering the applicability of sovereign immunity as a defense to breach of a governmental employment contract, "[this Court is] not now concerned with the merits of plaintiff's contract action. whether plaintiffs are ultimately entitled to relief [is a] question[ ] not properly before us"); *see also Smith*, 289 N.C. at 322, 222 S.E.2d at 424 ("We are not now concerned with the merits of the controversy.... We have no knowledge, opinion, or notion as to what the true facts are. These must be established at the trial. Today we decide only that plaintiff is not to be denied his day in court because his contract was with the State.").

---

provisions of the statute—whether on a theory of quantity of increased benefits or on a theory Defendants might otherwise have resolved any alleged comparability disparity through more intermittent increases, or both. For their part, Defendants read the Complaint too narrowly and ignore Plaintiff's allegations regarding the comparability requirement. For example, Plaintiff's Complaint plainly alleges: "The two, one-percent COLAs enacted for Retiree's [sic] is far from comparable to the seven across-the-board COLAs given to active state employees . . . ." **[R p 8]**.

[3] In fact, Defendants moved to dismiss under Rule 12(b)(6) before Defendants filed an answer and moved to dismiss under Rule 12(b)(1) and (c) on sovereign immunity grounds. The 12(b)(6) Motion was denied. Defendants have not appealed that order or sought review of that ruling in this Court. Thus, whether Plaintiff alleged valid claims against Defendants is quite clearly not before this Court at this stage.

HUGHES V. BD. OF TRUSTEES TEACHERS' & STATE EMPS.' RET. SYS.

*HAMPSON, J., dissenting*

*Can Am S., LLC v. State*, 234 N.C. App. 119, 127, 759 S.E.2d 304, 310 (2014).[4]

Thus, here, Plaintiff's allegations are sufficient to allege an implied waiver of sovereign immunity based on the State's entry into the alleged contract. Therefore, the trial court properly denied Defendants' Motion to Dismiss under Rule 12(b)(1) and for Judgment on the Pleadings under Rule 12(c) based on an assertion of sovereign immunity. Consequently, the trial court should be affirmed. Accordingly, I respectfully dissent from the Opinion of the Court.

---

[4] The Supreme Court recently noted that in certain cases involving a defense of sovereign immunity in constitutional claims against the State some review of the merits may be needed. *See Kinsley v. Ace Speedway Racing, Ltd.*, ___ N.C. ___, ___, 904 S.E.2d 720, 725 (2024). Here, though, we are concerned only with the existence of claims arising from an alleged contract with the State.